IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLIED VAN LINES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04 C 6900 |
| ) | |
| GULF SHORES MOVING & ) | |
| STORAGE, INC., NADINE PFEIFFER, ) | |
| WARREN C. PFEIFFER, and ) | |
| REBECCA DAFFRON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Allied Van Lines, Inc. is a large interstate moving company that conducts its business through a network of independent trucking companies contracted as agents. Allied alleges that one of its agents, defendant Gulf Shores Moving & Storage, Inc., of failing to pay $134,237.50 pursuant to their agreement for Allied to receive a specified portion of the revenue generated from Gulf Shores' moving business. Allied further alleges that Gulf Shores, two Gulf Shores officers, and the guarantor of Gulf Shores' contractual obligations have converted funds owed to Allied. Defendants have moved to dismiss for lack of personal jurisdiction, lack of venue, and failure to state a claim. In the alternative, they have asked that the case be transferred to the Middle District of Florida, where all the defendants reside and do business.

For the reasons stated below, the Court denies the motion to dismiss for lack of personal jurisdiction but grants the request to transfer venue.

**Facts**

When a court considers a motion to dismiss for lack of personal jurisdiction, the facts alleged by the plaintiff in the complaint are taken as true unless they are contradicted by affidavits submitted by the defendant. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988). If the parties submit conflicting affidavits, the conflicts are resolved in the plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

According to the complaint, Allied is incorporated in Delaware with its principal place of business in Westmont, Illinois. Gulf Shores is incorporated in Florida with its principal place of business in Fort Myers, Florida. Defendants Warren Pfeiffer and Rebecca Daffron, who are officers and part owners of Gulf Shores, are residents of Florida. Defendant Nadine Pfeiffer, who guarantied Gulf Shores' obligations, is also a Florida resident.

Allied and Gulf Shores signed two agency agreements that did not substantially differ. Under both contracts, Gulf Shores promised to pay Allied a portion of the revenue generated by its moving business. In return, Gulf Shores obtained the right to use Allied's name and trademarks. Allied also agreed to perform "certain home office functions" for Gulf Shores' benefit. According to the contract, these included, among other tasks, billing clients and agents, insuring against lost and damaged items, and national advertising. Cmpl., Ex.1, 2002 Contract §1, 1997 Contract §1.

Allied alleges that Gulf Shores failed to pay around $134,000 that it was allegedly obligated to pay under the contract. It alleges that the failure to pay constituted a breach of the contract. Allied also alleges that under the contract, Allied had an unconditional right to immediate payment of its share of the revenues generated by each shipment made by Gulf

2

Shores, and that Gulf Shores, by accepting payment in cash and other means, and by secreting its collections, converted some $10,000 in funds that allegedly belonged to Allied. Allied also contends that the individual defendants are individually liable for the conversion, though the complaint does not describe their alleged involvement. Allied has also sued Nadine Pfeiffer on her guaranty of Gulf Shores' contractual obligations. Finally, Allied alleges that Gulf Shores improperly terminated the contract unilaterally, contrary to certain contractual requirements, and it asserts that Gulf Shores should be required to pay Allied its lost profits for the post-termination period.

In support of their motion to dismiss, the defendants assert, and Allied does not deny, that the defendants do not transact any business, own any real estate, or have a registered agent in Illinois. In addition, none of the individual defendants has traveled to Illinois at any time relevant to this lawsuit. Allied points out, however, that the parties arranged for the contract and guaranty to be served in Illinois, set up payment of the contract in Illinois, and agreed in the contract that Illinois law would govern their disputes.

## Discussion

### A. Personal Jurisdiction

As the plaintiff, Allied bears the burden of proving the existence of personal jurisdiction by a preponderance of the evidence. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Because this is a diversity suit, jurisdiction is only proper in the Northern District of Illinois if an Illinois court would have jurisdiction. *See, e.g., Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994).

The Illinois long-arm statute allows Illinois courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. 735 ILCS 5/2-209(c). Because Illinois courts have not elucidated any "operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," the two constitutional analyses collapse into one. *Hyatt Int'l Corp. v Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

Due process permits a court to exercise jurisdiction when the defendant has had "minimum contacts" with the forum state such that the defendant could reasonably anticipate being haled into court there, and when the maintenance of the suit does not "offend traditional notions of fair play and substantial justice." *RAR*, 107 F.3d at 1277; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To establish the propriety of jurisdiction over Gulf Shores, Allied must point to some act or transaction by which Gulf Shores created a connection with Illinois, such that it purposefully availed itself of the privilege of conducting activities in this state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Gulf Shore's contacts with Illinois are similar to the types of contacts with the forum that the Supreme Court found sufficient to establish personal jurisdiction in *Burger King*. In *Burger King*, the plaintiff, which was based in Florida, filed suit in that state against of one of its Michigan franchisees. The Supreme Court found that jurisdiction over the franchisee in Florida was proper even though the defendant had never set foot in that state. The Court found that personal jurisdiction in Florida was supported by the fact that the parties' dispute arose from a contract that had a substantial connection with Florida; the defendant had negotiated with a Florida corporation to enter into a long-term relationship that provided the defendant with

4

significant benefits from affiliation with the Florida entity; the contract contemplated an extended relationship involving continuing and wide-ranging contacts with the Florida entity, including the making of payments to the plaintiff's Florida headquarters and ongoing monitoring by and communication with the plaintiff's Florida office; and the parties had agreed that Florida law would govern their disputes. *Id.* at 479-82.

Similar facts are at play here. First, Gulf Shores entered an agency agreement with Allied, an Illinois corporation, that contemplated a long-lasting relationship, and that lasted at least five years. Second, as in *Burger King,* Gulf Shores benefitted from its affiliation with Allied, as it was permitted to use Allied's trademarks, and Allied agreed to conduct national advertising for the benefit of all its agents. Third, similar to the defendant in *Burger King,* Gulf Shores agreed to pay a portion of its revenues to Allied in Illinois, and Allied agreed in return to provide operational support from its Illinois offices. Fourth, the parties agreed that Illinois law would govern their disputes. *See* Cmpl., Ex.1, 2002 Contract §3.18.

In sum, Gulf Shores formed an "interdependent relationship," *see Burger King,* 471 U.S. at 482, with an Illinois entity. This, along with the agreement that Illinois law would govern the parties' disputes, "reinforced [Gulf Shores'] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id. See also, e.g., Continental Bank, N.A. v. Everett,* 964 F.2d 701, 703 (7th Cir. 1992) (loan and guarantee contract that were substantially connected with Illinois, was to be repaid in Illinois, and under which Illinois law governed supported jurisdiction over out-of-state contracting parties).

The individual defendants established minimum contacts in Illinois by allegedly committing a tort – conversion – that caused injury here. A tort takes place at the site where

5

injury occurs. *See Janmark Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997). In *Janmark*, an Illinois maker of grocery carts accused a California competitor of tortious interference with prospective economic advantage by making false claims of copyright infringement. The California company sent threatening letters to the Illinois company's customers, leading a New Jersey customer to cancel an order. The court found that personal jurisdiction in Illinois was properly asserted over the California company because the cancellation of the order completed a tort that caused an injury in Illinois. *Id.* at 1202. Similarly, here the individual defendants allegedly converted funds for their own use that were to be paid to Allied in Illinois and thus injured Allied in Illinois. If Allied's allegations regarding conversion are true, the individual defendants foresaw and contemplated that their acts would impact an Illinois entity. Under *Janmark*, they established the requisite minimum contacts in this state.

Because each of the defendants purposefully established minimum contacts with Illinois, the Court must determine whether exercising establishing personal jurisdiction over them would violate "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This requires analysis of the burden on the defendant, the interest of Illinois in adjudicating the dispute, and Allied's interest in obtaining convenient and effective relief. *Id.* at 320; *see also, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Although it no doubt burdens a non-Illinois resident to litigate in this state, each of the defendants reasonably could anticipate being sued in Illinois. *See, e.g., Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 911 (N.D. Ill. 2003). Furthermore, Illinois has an interest in adjudicating the suit, because Allied is an Illinois company that claims to have suffered an injury in this state. *Id.* Finally, Allied has a strong interest in obtaining

convenient and effective relief for the loss of over $144,000 due to defendants' alleged actions. For these reasons, the exercise of jurisdiction in this District does not violate traditional notions of fair play and substantial justice.

**B.      Venue / Transfer**

The parties dispute whether venue is proper here, but the Court need not resolve this question in order to decide the defendants' motion to transfer the case to the Middle District of Florida. It is undisputed that venue would be proper in that District. If venue is proper here, 28 U.S.C. § 1404(a) permits transfer in an appropriate case; if venue is improper here, 28 U.S.C. § 1406(a) permits transfer.

Under § 1404(a), a court may transfer a suit "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought"; § 1406(a) similarly permits transfer "in the interest of justice." The same considerations govern transfer under these parallel provisions, *see Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530 (7th Cir. 2002).

To prevail, the party seeking transfer must establish "that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Factors affecting convenience include the plaintiff's choice of forum, the situs of the material events, the relative ease of access to sources of proof, the convenience of the parties and the convenience of witnesses. *See, e.g., Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 959 (N.D. Ill. 2000).

Though Illinois is Allied's chosen forum, the material events took place in Florida. Though the plaintiff's choice of forum is ordinarily granted deference, there are situations where

it is not granted great weight, such as when the forum 'lacks significant relationship with the underlying dispute. *See, e.g., D'Ancona & Pflaum LLP v. M2 Software Inc.*, No. 00 C 7150, 2001 WL 873021, *2 (N.D. Ill. Aug. 2, 2001). Illinois lacks a significant relationship with the parties' underlying dispute in this case, because the material events took place in Florida. Gulf Shores provides moving services from its sole place of business in Florida. The funds that Allied claims it is owed and those that were allegedly converted were all generated by Gulf Shores' work providing moving services from its Florida base of operations. It is true that, as noted earlier, any harm to Allied took place in Illinois. But the events that gave rise to that alleged injury occurred in Florida.

The other factors in the transfer analysis weigh in favor of transfer or are neutral. The issue of relative convenience is a wash. The parties have not specifically discussed what sources of proof may be needed at trial. But it is overwhelmingly likely that evidence of the revenues generated by Gulf Shores' activities is situated in Florida, and that the testimony regarding what Gulf Shores and the individual defendants did or did not do will come largely from witnesses in that state, where the relevant activities occurred.

Allied argues that the interests of justice will be served by keeping the case in this District, where the average time from the filing of a complaint to its disposition is shorter than in the Middle District of Florida. But this statistic is skewed by the significant percentage of this District's cases that consist of mortgage foreclosures, which are heard in significant numbers in few other districts, and nearly all of which resolve within 90 to 120 days of filing. The average time from filing to trial is a much better gauge of the relative pace of cases in the two districts. Cases move from filing to trial more quickly in Middle District of Florida (20.2 months) than

8

they do in the Northern District of Illinois (26 months). Pl. Resp., Ex. 4; Administrative Office of the U.S. Courts, Federal Court Management Statistics 2003: District Courts, available at http://www.uscourts.gov/cgi-bin/cmsd2003.pl. In short, the interests of justice favor transfer.

## Conclusion

For the reasons stated above, the Court denies the defendants' motion to dismiss for lack of personal jurisdiction [docket # 3]. The Court grants defendants' motion to transfer. The Clerk is directed to transmit the records and files of this case to the Clerk of the Middle District of Florida, Fort Myers Division. Defendants' motion to dismiss for lack of venue is denied as moot. Defendants' motion to dismiss for failure to state a claim remains for decision by the transferee court.

MATTHEW F. KENNELLY
United States District Judge

Date: February 23, 2005